IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 2, 2025

## STATE OF TENNESSEE, EX. REL. STACY P. v. BRET P.

**Appeal from the Chancery Court for Loudon County**
**No. 13181     Tom McFarland, Chancellor**

———————————————————

**No. E2024-01653-COA-R3-CV**

———————————————————

The State of Tennessee, on behalf of Mother, brought suit against Father for retroactive and prospective child support. The trial court deviated from the Child Support Guidelines in setting Father's retroactive child support, and he appeals. Because the trial court failed to make necessary findings of facts and conclusions of law to support its deviation from the guidelines, we cannot conduct a meaningful review. The trial court's order is vacated, and the case is remanded for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Vacated and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ANDY D. BENNETT and KRISTI M. DAVIS, JJ., joined.

Michael R. Stooksbury, Kingston, Tennessee, for the appellant, Bret P.[1]

Jonathan Skrmetti, Attorney General and Reporter, and Katherine P. Adams, Assistant Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Background

In July 2017, Stacy P. ("Mother") gave birth to Z.P. (the "Child"). Mother was living with Appellant Bret P. ("Father") when she became pregnant with the Child. Mother and Father had a tumultuous relationship and separated before the Child was born. At the time, the parties resided in Indiana, and, sometime after the Child's birth, Mother filed a

---

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names to protect their identities.

petition in Indiana to establish support for the Child ("Initial Petition"). Although Father appeared and cooperated with the Initial Petition, on April 20, 2021, it was dismissed due to Mother's lack of cooperation. Currently, the Child resides with Mother in Indiana, and Father resides in Tennessee.

On January 11, 2024, Appellee State of Tennessee ("State") filed a petition on Mother's behalf to establish paternity and for current and retroactive child support ("Second Petition"). In May 2024, it was confirmed through genetic testing that Father is the Child's biological father.

On July 11, 2024, the Magistrate for the Chancery Court of Loudon County (the "Magistrate") heard the Second Petition. Mother and Father testified at the hearing. On July 22, 2024, the Magistrate entered its findings and recommendations. Based on the parents' testimonies, the Magistrate found, *inter alia*, that: (1) the parents resided together in October 2016, when Mother became pregnant; (2) Father was aware of Mother's pregnancy; (3) Father was aware that Mother considered Father to be the Child's father; (4) the parents separated before Mother gave birth; (5) Father acknowledged that Mother sent pictures and communicated with Father's friends and family after the Child's birth, alleging that the Child was Father's child; (6) the Child has resided exclusively with Mother at all times; and (7) Father has provided no direct support for the Child. The Magistrate also found that the parties had a volatile relationship. Based on these findings, the Magistrate concluded that: (1) it could not "find that Mother unreasonably failed to cooperate in" the Initial Petition because Mother was too intimidated to pursue it; (2) "Father had ample reason to believe he was the biological father of [the Child];" and (3) "Father could have initiated his own paternity action at the time or at any time after learning of Mother's pregnancy or [the Child's] birth."

Although the Magistrate also entered an order concerning child support, Father's retroactive support obligation is the only issue in this appeal. Concerning retroactive support, the Magistrate found that Father's support obligation should have begun on February 1, 2019. Because neither parent provided evidence of his or her income for 2019, the Magistrate ordered retroactive support to begin on January 1, 2020. Relying on the evidence presented at trial, the Magistrate determined that Father owed $58,117.00 in retroactive child support.

On July 29, 2024, Father moved for a hearing with the Chancery Court for Loudon County ("trial court"). The trial court conducted a hearing on September 13, 2024, but heard arguments of counsel only. By order entered October 2, 2024, the trial court confirmed the Magistrate's findings and recommendations with certain exceptions. Relevant here, the trial court concluded that: (1) Father carried his burden to show that "he was unsure to a degree of his possible parentage of [the C]hild, because of Mother's non-cooperation in her previous petition to establish paternity"; and (2) "the extent to which [Father] did not know and could not have known of his possible parentage is limited in

nature" such that retroactive support is appropriate after April 20, 2021, *i.e.,* the date the Initial Petition was dismissed. Based on the foregoing, the trial court reduced Father's child support arrearage from $58,117.00 to $40,373.00 and entered a judgment against Father for same. Father filed a timely notice of appeal.

## II. Issues

Father's sole issue on appeal is whether the trial court erred when it used the dismissal date of the Initial Petition as the date that his retroactive support obligation began.

As Appellee, the State raises two issues, as stated in its brief:

1. Whether the chancery court erred in concluding that Father had rebutted the presumption in the Child Support Guidelines of awarding full retroactive support.

2. Alternatively, whether the chancery court acted within its discretion in partially reducing Father's retroactive-support obligation.

## III. Discussion

We do not reach the substantive issues due to insufficient and conflicting findings in the trial court's final order. In the order, the trial court confirmed "the Findings and Recommendations of the Child Support Magistrate . . . as the Order of [the c]ourt, with the exceptions that:"

a. [Father] carried his burden regarding the first factor of Tennessee Code Annotated § 36-2-311(a)(11)(1) in that he testified that he was unsure to a degree of his possible parentage of [the Child] because of Mother's non-cooperation in her previous petition to establish paternity, which was dismissed by the State of Indiana on April 20th, 2021.

b. The extent to which [Father] did not know and could not have known of his possible parentage is limited in nature and that retroactive support is appropriate after April 20th, 2021.

c. The amount of retroactive child support from the order entered on July 22nd, 2024, is $58,117 and includes January 2020 through July 2024.

d. The amount of retroactive child support to be stricken from the above amount is $13,432 for January through December 2020, and $4,312 for January through April 2021, totaling $17,744.

e. The State of Tennessee and/or [] Mother is hereby awarded a Judgment

against [] Father in the amount of $40,373.00.

Although trial courts retain discretion over child support issues, including retroactive support, "decisions regarding child support must be made within the strictures of the Child Support Guidelines [("Guidelines")]." *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). Furthermore, given that trial courts retain discretion over such matters, it is particularly important that lower courts provide the necessary findings of facts and conclusions of law in their orders to allow this Court to determine whether there has been an abuse of discretion. *Knipper v. Enfinger*, No. W2019-02130-COA-R3-JV, 2020 WL 5204227, at *3 (Tenn. Ct. App. Aug. 31, 2020). Concerning retroactive child support, the Guidelines provide that, when initial support is being set, unless the obligor has rebutted, by clear and convincing evidence, the presumption that retroactive child support is owed, "a judgment must be entered to include an amount of monthly support due up to the date that an order for current support is entered." Tenn. Comp. R. & Regs. 1240-02-04-.06(1). "Retroactive child support is generally to be awarded back to the date of the birth of the child, the parents' separation, or the abandonment of the child." *Id.* at *5 (citing Tenn. Comp. R. & Regs. 1240-02-04-.06(3)). Unless the court determines, for good cause shown, that a longer time period of retroactive support is in the interest of justice, retroactive child support "shall not be awarded for a period of more than five (5) years from the date the action for support is filed[.]" Tenn. Comp. R. & Regs. 1240-02-04-.06(2).

As discussed above, the trial court deviated from the presumption and reduced Father's retroactive child support obligation. When determining whether to deviate from the presumption of retroactive support, courts *shall* consider the following factors:

(i) The extent to which the father did not know, and could not have known, of the existence of the child, the birth of the child, his possible parentage of the child or the location of the child;

(ii) The extent to which the mother intentionally, and without good cause, failed or refused to notify the father of the existence of the child, the birth of the child, the father's possible parentage of the child or the location of the child; and

(iii) The attempts, if any, by the child's mother or caretaker to notify the father of the mother's pregnancy, or the existence of the child, the father's possible parentage or the location of the child[.]

Tenn. Code Ann. § 36-2-311(a)(11)(A). "In making any deviations from awarding retroactive support, the court shall make written findings of fact and conclusions of law to support the basis for the deviation[.]" Tenn. Code Ann. § 36-2-311(a)(11)(F).

As shown above, the trial court solely relied on Tennessee Code Annotated section 36-2-311(a)(11)(A)(i) as the basis for deviating from the Guidelines. The trial court found that Father "carried his burden" to deviate from the Guidelines because "he testified that he was unsure *to a degree* of his possible parentage" because Mother failed to cooperate with the Initial Petition. (Emphasis added). As an initial matter, the trial court failed to find that Father rebutted the presumption with clear and convincing evidence, as required by section 36-2-311(a)(11)(B) and the Guidelines. *See* Tenn. Code Ann. § 36-2-311(a)(11)(B); Tenn. Comp. R. & Regs. 1240-02-04-.06(1). "Clear and convincing evidence" requires a higher burden of proof than the preponderance of the evidence standard. Under the clear and convincing evidence standard, there must be "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Thus, the trial court was required to find that there was no serious or substantial doubt concerning the extent to which Father did not know and could not have known of his possible parentage of the Child. Tenn. Code Ann. § 36-2-311(a)(11)(A)(i). The trial court's lack of findings constrains our review of this issue. Indeed, the trial court failed to elaborate as to what "degree" of knowledge Father had that the Child was or was not his biological child. Additionally, the trial court did not address the other two factors in section 36-2-311(a)(11)(A). Section 36-2-311(a)(11)(A)(ii) required the trial court to consider the extent to which Mother intentionally failed or refused to notify Father of the Child's existence or birth, Father's possible parentage, or the Child's location. Tenn. Code Ann. § 36-2-311(a)(11)(A)(ii). Section 36-2-311(a)(11)(A)(iii) required the trial court to consider Mother's attempt to notify Father of her pregnancy, the existence of the Child, Father's possible parentage, or the Child's location. Tenn. Code Ann. § 36-2-311(a)(11)(A)(iii). The Magistrate made findings directly relevant to these factors. As an initial matter, the Magistrate found that the parties lived together when Mother became pregnant. Additionally, the Magistrate found that Father was aware: (1) of Mother's pregnancy; (2) that Mother considered Father to be the Child's father; and (3) that Mother sent pictures to Father's friends and family after the Child's birth and communicated with them that the Child was Father's child. On review of the Magistrate's findings, it appears that Father was not only aware of the Child's existence, but he also was apprised of the likelihood that the Child was his. Nonetheless, he chose to remain ignorant of the truth. Indeed, the Magistrate found that Father "had ample reason" to believe he was the Child's Father. Furthermore, the Magistrate found that Mother did not unreasonably fail to cooperate in the Initial Petition because: (1) the parties had a volatile relationship; (2) Mother was afraid of Father; and (3) Mother was too intimidated to pursue the petition. The Magistrate also found that Father "could have initiated his own paternity action" after the Initial Petition was dismissed or at any time after learning of Mother's pregnancy or the Child's birth. It is difficult to reconcile these extensive findings, which the trial court confirmed as its own, with the trial court's finding that Father carried his burden to deviate from the Guidelines. Even more perplexing is the trial court's second finding that "[t]he extent to which [Father] did not know and could not have known of his possible parentage is limited in nature[.]" The trial court made no finding as to why Father's ignorance of his

- 5 -

parentage would be "limited in nature." Nevertheless, the trial court reduced Father's retroactive support obligation, finding that it should begin after April 20, 2021, *i.e.,* the date the Initial Petition was dismissed in Indiana. Again, the trial court provided no findings of fact or conclusions of law to support its application of this date. For the many reasons discussed above, the trial court's order failed to provide the necessary findings of fact and conclusions of law to support its deviation from the Guidelines and the presumption that full retroactive support should be awarded.

Assuming, *arguendo*, that the trial court made the proper findings of fact and conclusions of law to support deviation, it was required to provide additional findings in its order under both statutory law and the Guidelines. If a court deviates from the Guidelines, it "**must** make a written finding that application of the guidelines would be unjust or inappropriate in order to provide for the best interests of the child or the equity between the parties." Tenn. Code Ann. § 36-2-311(a)(11)(B) (emphasis added). Additionally, the trial court was required to "include in the order the total amount of retroactive support that would have been paid . . . had a deviation not been made by the court[.]" Tenn. Code Ann. § 36-2-311(a)(11)(F). Similarly, the Guidelines require the trial court to include in its written order:

> (b) The amount of child support that would have been required under the Guidelines if the presumptive amount had not been rebutted; and
>
> (c) A written finding . . . that states how, in [the tribunal's] determination,
>
> > 1. Application of the Guidelines would be unjust or inappropriate in the particular case before the tribunal; and
> >
> > 2. The best interests of the child or children who are subject to the support award determination are served by deviation from the presumptive guideline amount.

Tenn. Comp. R. & Regs. 1240-02-04-.06(3)(b), (c). The Guidelines make clear that, when deviating from them, "primary consideration must be given to the best interest of the child for whom support under these Guidelines is being determined." Tenn. Comp. R. & Regs. 1240-02-04-.07(1)(b). Here, the trial court stated the amount of retroactive child support the Magistrate ordered, but it did not provide the amount of support that would have been required under the Guidelines if the presumptive amount had not been rebutted.[2] Tenn.

---

[2] The Magistrate determined that Father's retroactive support obligation should begin on January 1, 2020. Under the Guidelines, retroactive support would have been awarded five years from the date the Second Petition was filed. *See* Tenn. Comp. R. & Regs. 1240-02-04-.06(2). Because the Second Petition was filed on January 11, 2024, January 11, 2019, would mark the beginning of Father's retroactive support obligation under the Guidelines. Accordingly, the Magistrate's retroactive support award is not the presumptive award amount under the Guidelines.

- 6 -

Code Ann. § 36-2-311(a)(11)(F); Tenn. Comp. R. & Regs. 1240-02-04-.06(3)(b). Additionally, the trial court failed to provide any written findings to support that: (1) application of the Guidelines would be unjust or inappropriate; and (2) deviation from the Guidelines was in the best interests of the Child. Tenn. Code Ann. § 36-2-311(a)(11)(B); Tenn. Comp. R. & Regs. 1240-02-04-.06(3)(c). Indeed, it does not appear that the trial court considered the Child's best interests.

"When the trial court orders a deviation of child support without the required findings, we have often held that the decision should be vacated and the cause remanded for the entry of a fully compliant order." *Knipper*, 2020 WL 5204227, at *8 (citing *Vance v. Vance*, No. M2017-00622-COA-R3-CV, 2018 WL 1363323, at *6 (Tenn. Ct. App. Mar. 16, 2018), *perm. app. denied* (Tenn. Aug. 9, 2018)). Because there were insufficient findings of fact and conclusions of law in the final order, we remand the case to the trial court to reconsider whether a deviation from the Guidelines is warranted. Our holding does not preclude the trial court from reopening proof on remand. If the trial court finds that Father is entitled to a deviation, it must make explicit findings of fact and conclusions of law to support the deviation, as discussed extensively above. We caution the trial court against merely issuing conclusory statements without findings to support such statements. *See Vance*, 2018 WL 1363323, at *6.

## IV. Conclusion

For the foregoing reasons, we vacate the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed one-half to the Appellant, Bret P., and one-half to the Appellee, the State of Tennessee. Execution for costs may issue if necessary.

_s/ Kenny Armstrong_
KENNY ARMSTRONG, JUDGE